8-15-06 Comcast v. Finisar Mr. Laycock, you are, well actually let's allow everybody to get settled here. Thank you your honor. I think everybody's settled in. Mr. Laycock. May it please the court, I'm Larry Laycock of the Workman Nidegger firm. I'm appearing on behalf of the appellant Finisar. The governing authorities and facts of the instant appeal demonstrate that reversal and remand are appropriate in this case for three independent reasons. First, neither the Jexie nor the Tiedemann reference, either alone or in combination, disclose all of the elements of Claim 25 at issue. The district court failed to even recognize all of the requisite claim elements for Claim 25. Second, even assuming, arguendo, that all of the Claim 25 elements were disclosed in combination of Jexie and Tiedemann, the district court committed reversible error by impermissibly picking and choosing from among the disclosures without any reason or motivation to do so, other than improper hindsight analysis. And third, at the very least, the record demonstrates the existence of multiple genuine issues of material fact which require remand, and each of which precludes entry of summary judgment and requires a determination by the trier of fact. You'll recall that in this case there are two statements from the Tiedemann reference that get most of the attention. We refer to these as the inclusion and dedication statements from the Tiedemann reference. I would like to address each of these in turn. First, with respect to the inclusion reference, the inclusion reference being found at Appendix 3202. The court erroneously relies on this statement suggesting inclusion of a full motion video signal in teletext and videotext systems. The inclusion reference fails to satisfy the court's obviousness conclusion for four significant reasons. First and prominently, Comcast admits at page 15 of its brief that the Tiedemann reference defines itself, motion video, as on-demand television. As the court is aware, as your honors are aware, on-demand television is what the prior art was referenced to in the 505 patent specification. It is not the invention of Claim 25, nor is it the invention of Claim 16, from which Claim 25 depends. In fact, Tiedemann states that motion video should be used for on-demand television. This is the antithesis of what the invention of Claim 16 was, and significantly, for this case, it is the antithesis of what Claim 25 actually constitutes in terms of the overall reading of that claim with its requisite interrelationships between the claim elements. This is important because the inclusion statement cannot mean the inclusion of digital video in the very particular transmission scheme that is disclosed in JEXI. Now, this is also important for the reason that the district court's conclusion that this inclusion statement from Tiedemann shows obviousness, that is fully contradicted by the evidence of record in the form of the testimony of Dr. Katz. You will recall that Dr. Katz testified, and his core statements must be accepted as true under the Rule 56 standard, that first, with the advent of these advances with digital video as a reality, the person of ordinary skill would necessarily look to these advances and not, according to Dr. Katz, go back to combine them with an antiquated and archaic system that existed before. In other words, the digital video spoken of by Mr. Tiedemann would never be combined, according to one of at least ordinary skill in the art at the time of the invention, with the teletext of the scheme suggested at pages 175 and 176 of the JEXI reference. Now, significantly, Dr. Katz also testified that the teletext system was designed specifically for the broadcast, the transmission of textual data, and textual data alone, and the combination of those would not be something to which one of ordinary skill in the art would look in order to infuse this new advancement into something that had the disadvantages of the past. In fact, it would be just the opposite. We learn at paragraph 27 of the declaration of Dr. Katz that in 1991, the conventional wisdom of those of ordinary skill in the art would have been based on a two-way system, such as the demand TV. Now, recall, that is exactly what Mr. Tiedemann defines his system as relating to when we talk about the inclusion statement. He takes the motion video and he puts that into a system with two-way transmission. That is, a user makes a demand and a response is made. That is, again, the antithesis of either Claim 16 or, when read as a whole, Claim 25. Under those circumstances, Dr. Katz concludes that it is not obvious to combine Tiedemann with the teachings of Jexie for the purpose of accomplishing the objectives of Claim 25, and that is because the conventional wisdom was that digital video should be provided on an on-demand basis and not forced into an antiquated system, such as that revealed in the Jexie reference. This raises a genuine issue of material fact. Wasn't Dr. Katz's testimony given in the context of the scheduling feature of independent Claim 16? His testimony goes specifically to the discussion of the necessary elements from which Claim 25 depends. In other words, Claim 16, all of those interrelationships among the required claim elements, travel with and become a part of Claim 25. He speaks to the issue that the Court, in defining the claim terms, misses the point, or, in other words, misdefines the remaining claims, and the Court goes on in this process of really picking and choosing, in other words, ignoring what has gone before and these critical interrelationships among the claim elements. I'm not sure it's entirely fair to conclude that Judge Alsop was picking and choosing and just looking at individual features and not looking at the invention as a whole. But the point I was raising with respect to Dr. Katz's testimony is that I'm not so sure that it is as expansive in terms of its probative value with regard to Claim 25 as you characterized it. Your Honor, I would submit that it is and does have the probative value for two independent reasons. To be clear, just so that I'm quite literally on the same page with everyone else here, we're talking about A3992 to A3993 of Katz's declaration, correct? Yes. I would refer the Court's attention to the appendix at pages 3988 through 3994. But the section that you're talking about now is A3992 to A3993, correct? Correct. And I would draw the Court's attention specifically to paragraph 24, to your point, Your Honor, wherein Dr. Katz directly addresses the issue at hand by saying that by 1991, with the advent of the advancement in digital video as a reality, the person of ordinary skill would not go back to combine those advances in digital video with the antiquated system of Jexie. But he goes on, and I draw your attention now to A3993, Your Honor, in which paragraph 25 points out that the teletext system was designed exclusively for transmission of text only. That leads us to the statements within paragraph 27 of the Dr. Katz declaration in which he says conventional wisdom of the person of ordinary skill was based on the two-way system of request and demand. Couple that with the statement by Teitman himself that motion video is in reference to on-demand television, which is a two-way system. And then we can go to paragraph 28, which is also found in the appendix A3993. And in that statement, he says this is not an obviousness issue. It is not an obviousness claim, obvious claim, because in 1991, the conventional wisdom was that digital video should be provided on an on-demand basis. That's consistent with what Teitman himself said, and not forced into an antiquated system. This is not unlike the Adams Supreme Court case, the battery case, in which the court upheld the finding of non-obviousness. And you'll recall the Supreme Court stated very clearly that known disadvantages in old devices, that's what we have here, a known disadvantage in antiquated system, which would naturally decrease the search for new inventions in that context. The search for those new inventions may be taken into account when determining obviousness. Going to your question, is it relevant? Of course it is. And in this context, under Rule 56, Your Honor, it is critical, because those statements must be accepted as true, and every inference arising out of them must be viewed in a light most favorable to Finisot. That gives us a genuine issue of material fact that must be considered at the trier fact level. What's wrong with the analysis that Judge Alsop conducted, which is I took it to be as follows? He said, well, Claim 16, I don't need to worry about that, because it has been held to be anticipated in a final judgment. So everything that's in 16 is in the prior art. And so what I've got here is an assertion of Claim 25. 25 depends from 24. So he looked at 24, and he said 24 added two limitations on top of 16. And then he said 25 added two more limitations on top of 24. So he said, I need to decide whether the four new limitations that are in 25 are in the prior art. So he looked around, and he said, I think they're in Teiteman. And then he said, now I have to decide whether I could combine, would combine Teiteman with Cechi. And he said, that's easy, because the Cechi tells you to do it. And so he made the combination, and he said, game's over. And to a moral certainty, I think I'm correct. Now, can you explain to me, because I don't understand you to argue that if the four limitations added to 16 by 24 and 25, I don't understand you to say if those are in the prior art that you have a hope to win, because you don't argue against the combination. So to me, you would have to show me that the trial court committed clear error when he read Teiteman to teach the four limitations that are added. It's as simple as that. Thank you. Clear error occurs because of the fact that Judge Alsop, the district court, failed to recognize the full meaning of those four limitations. Full meaning, he understood that everything that came out of 16 is already gone. You can't recover anything that 25 is a little claim. It depends from a granddaddy, a big one, an independent. And everything that is in 25 that's big is gone already, forever, can't get it back. And it's just a question from Judge Alsop's point of view for curlicues that are put on to 16. Now, can you show me where Teiteman doesn't teach either one or two or three or four of those additional limitations? I can, Your Honor. I can show you on all four of them. First, with respect to the definition of those claims, he never addresses where Teiteman, for example, in the inclusion statement. The inclusion statement speaks nothing to the fact of multiple channels. It says nothing. The dedication statement of Teiteman says nothing about multiple channels arising out of the same information data. Well, I thought the judge, in his opinion, actually cited to Teiteman as to each one of these places where he found the teaching. Yes. So I would have thought you would have had to take those particular references in Teiteman on one by one and knock them down. I didn't see you doing that in your brief. In actuality, Your Honor, they are, and it's addressed under the section, the claim read as a whole, because the failure here— But I'm rejecting that. The claim read as a whole is, to me, a red herring, because everything that's in 25 that came over from the big boy from 16 is gone. You can't retrieve a penny of that. And if I may address that, Your Honor, that very point, in this particular situation, what we don't have is Teiteman ever teaching us a situation in which you have multiple channels with video, signal, and in this multiple-channel scheme in which you have an entire database with a common indexing system in which you also have a single channel that's part of that system and that indexing scheme that also incorporates primarily non-video information. You have a situation where he talks about establishing separate and distinct independent teletext channels, but those aren't multiple channels within a single database, as required by the claim. Well, you have in Teiteman a teaching at Appendix 3198 that says there's no theoretical limit to the number of channels that can be distributed. That's correct. And then he goes on to say that you can dedicate multiple channels to, in this case, teletext. That would be only textual data. But more importantly, that raises another genuine issue of material fact. I see my time has expired, and I may respond to the question. Here, this is important because you recall that Mr. Hedger testified that in that very scenario, Your Honor, where you have these multiple channels of text or teletext systems, we have Mr. Hedger, who, as you will recall, is an individual who worked for years for teletext itself, and he's also an individual who was one of their technical supervisors. He testifies very clearly that you don't have any mechanism within teletext to address or access multiple channels. In other words, the most that Teiteman can then suggest in that context is a single, independent teletext system, not within databases required by the claim, but separately operating, and then another and another. Well, Teiteman makes a number of, shall we say, predictions, if you will. Then he goes on to page 3193, and he talks about the availability of a large bandwidth communication link on today's coaxial systems, tomorrow's fiber optic systems, makes possible the eventual inclusion of full motion digital video signals in teletext and videotext systems. So it's not just text only. It is important to understand what is meant by, in response to this question, what does Teiteman define as constituting the teletext videotext? Now, I draw your attention specifically, Your Honor, to appendix 3088 and the bridge over 289. There are two separate references. Now, when Teiteman speaks to the issue of what he's talking about when he says teletext, what he's talking about when he says videotext is a very broad class of systems, including any system that provides electronic information to the home. He also further defines that as acknowledged by Comcast as being a two-way on-demand television system. Therefore, the Teiteman inclusion statement that you have referenced would not lead to the inclusion of digital video in a particular transmission scheme that was never made, by the way, never used. It was merely hypothetical in reference to pages 175 and 176 of JXE. But rather, it would simply be the particular transmission scheme, to get it to the point where it can constitute an appropriate combination to capture all of the claim elements with their interrelations. So which limitation in 2425 are you talking about now? In this one, it would be the entire overall system. You cannot, the inclusion statement that is referenced here. What I was looking for was for you to show me where the trial judge erred in finding disclosures in Teiteman of things such as data must be capable of being transmitted across multiple transmission channels. That's one. And Judge Glenn pointed out the language that the trial judge relied on for that, and I didn't really hear you to say that that's wrong. It is wrong, and as I've explained, when they talk about multiple channels, he's talking about dedication of multiple channels of teletext. That is all information in the text. But then Judge Glenn then cited you to another page where they were talking about teletext and video. Yes. Now, if you include, if you take the inclusion statement and you add that to teletext, as the prior art suggests, all you have is two separate systems because they can't work together. We know from Mr. Hedger, as a factual matter, a fact that must be accepted as true, that you can't take teletext, and that's what you're including it with. You can't take teletext and have it operate within a multi-channel system. That's what Mr. Hedger says. That's why it's not there, Your Honor, because Mr. Hedger has already explained to us that there is no mechanism to have teletext work with multiple channels. So the only thing that you can have are separate and distinct, not within the same databases required by the claim, teletext or textual transmissions. So you can't have the multiple channels because of that. And the factual, the genuine issue of material fact that arises out of that question is what Mr. Hedger gives us. And, of course, his statement must be accepted as true. He says you cannot have this addition. So it's essentially a system where, like, if you had a laptop computer and you can access the Internet on one hand in a separate system and then you have a CD drive as a separate system, those don't constitute Claim 25 because they're not part of an overall database with a common indexing system. Under those circumstances, the claim fails to disclose all of the necessary elements that we submit that remand is appropriate and necessary. Very good. Thank you. Why don't we hear next from Mr. Silbert. We will see. Mr. Jones, could you add? We will preserve two minutes for rebuttal for you. We'll add them back. And, Mr. Jones, could you add seven minutes to Mr. Silbert's time if he needs it, please? Thank you, Your Honor. May it please the Court, let me begin by addressing the question raised by Judge Clevenger, which is, is there any basis to argue that Judge Alsup was incorrect in concluding that the Tiedman reference discloses all of the limitations of Claim 25? And Judge Alsup was absolutely correct in making that conclusion. It's very clear in Tiedman, and I believe in listening to counsel, that there's a fundamental premise in counsel's argument which is incorrect, and that premise is that Tiedman, quote, defines the video that can be included in teletext as video on demand, and therefore, I guess by implication, all references to video would mean only video on demand, and Tiedman would not teach a system using video that's not video on demand. Tiedman does not define the video in teletext as video on demand. He does make, the book does make one reference to video on demand as a feature that can be delivered with teletext, but the Tiedman reference says. You want to be precise and show us where that is, because my guess is your adversary is going to get up and disagree with you in the two minutes you've got, and why don't we find ourselves a big book, you know? Absolutely, Your Honor. Some of which, unfortunately, is hard to read. You have a copy from? Let me direct the court to pages A3193, A3201-02, and A3212. There are multiple references to including video, full motion digital video, in teletext services. Tiedman says at page A3193, digital video will permit greatly enhanced teletext video text. I'm sorry, what page are you on? Excuse me, Your Honor, A3193. Is there on the page in the great black section at the top that purports to be text, or in some other portion that can actually be text? You'll notice the top part has been masked over. Well, that's not, no, I don't think that was intentional. I think that was a function of photocopying that wasn't done with much care. Where's full motion video on that page, please? It is quite difficult to read. Is it up there in the top part? Is that where it is? Let me consult it. Well, there's a sentence at the end of the paragraph that begins, there have also been two recent developments that refers to full motion video. Right. All right. It says full motion video will replace existing slow sound video. Exactly. When this occurs, and the this refers to the mass market penetration of developments that have already occurred, digital video will permit greatly enhanced teletext video systems. Full motion video will replace existing slow scan video and graphic text displays. Were you suggesting there were other references in Teitman that make the same point? There are a number of other references to video as well, Your Honor. Do you have some sites? Yes. For example, A3211 occurs in a discussion of user terminals and notes the various attributes of teletext that a user terminal needs to be able to process. It includes graphics, text format, motion video, et cetera. So the misconception that I believe underlies counsel's point. And the trial judge referred to that section, I believe, didn't he? I believe that he did, Your Honor. He discussed Teitman's discussion of user terminals. Yes. The fact that Teitman refers to video on demand as a feature that could be delivered through teletext does not mean that he defined that as the only video, type of digital video, that could be delivered through teletext. And these references, I believe, in no way make that limitation. They discuss full motion video enhancing teletext services. So, in other words, Teitman does disclose the inclusion of video. It says so expressly in a teletext system, full motion video. The other, I believe there was also reference to whether Teitman discloses the use of multiple channels. And, again, Judge Alsop was correct that it does so at page A3198 of the record. Teitman says, and I'm paraphrasing, but says, there's no limit to the number of channels that can be used on a coaxial cable system, and, therefore, complete channels, in the plural, can be dedicated to teletext services. Again, those teletext services he describes repeatedly in the book can include video and non-video. He also proceeds in that passage to discuss using higher bandwidth transmission means as well, such as fiber optics even and other media. So, in other words, all of this is... There is something, is there not, to the incongruity of applying all this much more modern capacity to a much earlier type of structure. Teletext is pretty ancient and pretty crude stuff by even the standards of 1991. I mean, it's sort of like talking about putting a Corvette engine in a Model A frame, right? It isn't something that's intuitively at least attractive as an option that anybody would employ. I think there's a distinction, Your Honor, that needs to be made between teletext as it was commercially deployed and teletext as the people who were designing the systems, thinking about the system, thinking about how to evolve the system were thinking about it. Teletext, as it was commercially deployed, was, I agree, relatively crude, certainly in the beginning. Now, a number of teletext systems did evolve, and it evolved into essentially a precursor of the Internet. But the fact that it was commercially feasible in the 1970s and early 1980s when these systems were being deployed, to deploy them over television, analog television networks, which were relatively low bandwidth, there was little bandwidth available, et cetera, does not mean that it was inventive to say we could do the same thing over higher bandwidth media. If we do that, we could include a lot more data, including things like data for full motion video. And let me be clear, not only was it not inventive to make that statement, but that's expressly said in Tideman. Tideman says we can use higher bandwidth media, we can use full channels on coaxial cables, we could use fiber optics, and this will allow for the inclusion of transmission of a lot more data. So while it may not have been a commercially viable system at the time, it would have taken too many computers, too much memory, too much cable, et cetera, so that a company would not have wanted to deploy it, it was not an invention, even as of 1980. If the incongruity that the presiding judge points to, which seems natural to describe it that way, had been dispositive, then Finistar wouldn't have come out the way it did, right? I mean, it just seemed to me that we'd cross that bridge then, because you use the Chesky reference, which has got the same warts, if you will, as the Finistar, in terms of it's describing an old system having a potential future use. So I mean, it's an interesting point, but it would seem to me that if the point was going to have a dispositive effect, the time for having made the point and winning on it came and went earlier. I agree, Your Honor, and I think the same point is relevant to the discussion of the Katz declaration, where, first of all, and Judge also pointed this out in his order, Katz's declaration essentially says that Claim 16 is valid, and Claim 16 went against the conventional wisdom of the day. Well, he's the prime witness for the incongruity. He's saying, look, nobody in their right mind could have been talking about that because nobody puts a Corvette engine in a Model A. I think I read his statements a little bit differently. I think he says, excuse me, by Dr. Katz's statements in the affidavit, that he says essentially by 1991 the conventional wisdom is his words. The conventional wisdom was to use a two-way system, and therefore it was inventive to suggest using a one-way system. But that same argument applies to Claim 16, which the Court has already invalidated. I would also just point out with reference to the Katz declaration that the statements in that declaration are very analogous to the declarations at issue in KSR, where there were declarations from experts attesting to the novelty of the invention in KSR. The experts said, effectively, this is a novel combination of elements. It's different from what occurs anywhere in the prior art, and therefore it's inventive. The Supreme Court, of course, was very clear in saying that nothing in those declarations, simply an expert testifying that in his opinion this is inventive and different from the prior art, prevented the entry of summary judgment. Let me tell you what gives me some pause here, and it comes up a lot. It's the problem of aspirational language as opposed to language that really does describe something in detail. I understand this touches perhaps more on enablement than anything else, and we don't have enablement technically directly before us. But help me out with Tiedemann. The problem I see with Tiedemann, if there is a problem, is that it is aspirational in tone and character. He's saying, look at all these new things that are on the horizon, and look at all the kinds of things we can do. You see that type of speculation in a lot of places. Normally we wouldn't think that that would anticipate or render obvious a later invention when somebody actually shows how it is you go about making all these new capacities work or integrate into the structures that actually make something show up on your screen. Why isn't Tiedemann unduly aspirational in this context? First of all, two reasons that I can think of. First of all, it's not strictly aspirational, and while it does talk in future terms about what can be included in teletext systems, Tiedemann is also clear in saying these are developments which have occurred. So in the passage that we just found in the darked-out section of the text, it refers to the development of digital video. And then it says when this filters into the mass consumer market, it will allow the enhancement of teletext systems with full motion video. But full motion video at the time was technically feasible and had been done. And so an embodiment of the invention, the Claim 25 does not require that it be a massive system with millions of users. An embodiment of the invention was feasible in 1983. Excuse me, 1983. In 1982 when Tiedemann was published. It was not an embodiment that would have been worth any enterprises actually building because to process that much data at that time would have been extremely expensive. Subscribers would have had to buy extremely expensive components. No one would have wanted to build it, but it was feasible at that time. So you're saying there's a difference here between Tiedemann and Jules Verne. Tiedemann is reflective of sort of ongoing development efforts with some suggestions as to where the future might lie. Yes. And not entirely aspirational. Yes, and it's pertinent here that Tiedemann specifically says these things have been developed. They have been developed. And when they filter into the mass consumer market, then we'll see more of this in teletext systems. So I believe that this case is not a strict example of the hypothetical. You think it's not a Jules Verne case. I mean, I think that's sort of exactly what I was trying to get at, to put it much more succinctly. Yes. And I would just also add that in the situation where it is, even if it were the Jules Verne case where suppose Tiedemann said it would be useful to transmit hundreds of terabytes on a single channel, something that wasn't feasible at the time, if other developments that are not attributable to the patent but simply other developments in the field later make that feasible, and a patentee then comes along and says, I'm going to patent doing exactly what Tiedemann said because it wasn't feasible at the time that he did it, I still believe that's not invented. Okay. Mr. Silberg, in KSR the Supreme Court said, whereas here the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate. What do you think the Supreme Court meant when they said, and the obviousness of the claim is apparent? When is obviousness apparent? I have understood that statement. That statement occurs in the specific discussion that I referenced where the Supreme Court says the mere fact that an expert said in a declaration that this is a non-obvious misinvention does not prevent the district court or the court from finding obviousness on summary judgment. I understood that particular statement to mean simply applying that the scope of the claims has been resolved, the level of ordinary skill in the art has been resolved, and then when the district court can determine what the prior art disclosed to a person of skill in the art, and if that disclosure encompasses the full scope of the claim, as arranged in the claim, the claim is honest. It's an interesting question because it's almost apparent if you conclude it's apparent and it's not if you conclude it's not. Well, here Judge Alsop concluded it was. Your Honor, I used more than 15 minutes. I have some of the extra time left, but unless the Court has additional questions, I'm prepared to submit. Thank you very much, Mr. Zilber. And Mr. Laycock, we promised you a couple of minutes of rebuttal, and we will live by our word. Obviousness is not apparent under circumstances in which one of the least ordinary skill demonstrates through testimony, as in this case with Mr. Hedger, that the combination of elements is not possible. You'll recall that Mr. Hedger testified that you cannot have a system, including teletext, that will access a single database and be able to access all of the channels. Now, it is critical to note that the lower court did not even acknowledge, completely wholesale ignored Mr. Hedger's testimony. Under that circumstance, a genuine issue of material fact, which must be accepted as true under the applicable standards, was simply ignored. This ought not to be. Furthermore, with respect to the four elements that have been discussed, remember the first element talked about That cannot be accomplished in light of Mr. Hedger. He testifies that you just can't do it with teletext. So that's missing. On the second limitation, that of receiving data on multiple transmission channels, once again Mr. Hedger's testimony absolutely precludes the combination that is necessary in order to render this claim obvious. And once again, that must be accepted as true under the circumstances of this case. Going to the third element, that limitation, as noted, required that the database containing the information being transmitted must include both video program materials and non-video information. Just to make sure, again, I understand where you're referencing. We have two excerpts of Hedger. One is we have a declaration at 3984 through 87, and then we have an excerpt of really one page of his expert report at 3686. We have the first page, but that's just his qualification. Yes, Your Honor, I draw your attention specifically to paragraph 8 at appendix 3987. And you'll note that Hedger testified that there is, quote, there is no mechanism, close quote, in Teletext's indexing scheme for accessing a database across multiple channels. So you cannot have the multiple channels required under Claim 25 with this combination. Understandably... Where are you on page 3987? Paragraph 8, Your Honor. Yeah, okay. And I draw your attention to the first line, beginning Teletext would have been unable to access selected portions of a database over multiple channels because it had no mechanism for accessing a database across channels using a single structure as discussed. Under those circumstances, and with that statement being taken as true, as Rule 56 requires, there is a genuine issue of material fact that must be determined by the trial fact at the trial level. And that's true with respect to the fourth element as well. Of course, Mr. Katz's testimony... If you could wrap up, Mr. Lake. Yes, I see. Thank you. I would simply state that under the circumstances of this case, there are two significant problems. One, genuine issues of material fact still exist. And finally, there has been a picking and choosing without motivation to do so. And I would simply note, as was noted in KSR, that under the circumstances of this particular case, Your Honor, a flexible TSM test remains the primary guarantor against a non-statutory hindsight analysis. Thank you.